IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CRYSTAL E.[1],

                Plaintiff,

v.

COMMISSIONER,
Social Security Administration,

                Defendant.

Case No. 6:18-cv-01059-AC

OPINION AND ORDER

KATHERINE L. EITENMILLER,
MARK A. MANNING
Harder Wells Baron & Manning, PC
474 Willamette St.
Eugene, OR 97401
       Of Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
District of Oregon
1000 SW Third Ave., Suite 600
Portland, OR 97204-2936

ALEXIS L. TOMA
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
       Of Attorneys for Defendant

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

OPINION AND ORDER – 1

ACOSTA, Magistrate Judge:

Crystal E. ("Plaintiff") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II and Social Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

*Procedural Background*

Plaintiff filed for DIB and SSI on September 5, 2014, alleging disability beginning March 15, 2013. (Tr. 83-84.) Plaintiff alleged disability due to confusion, depression, back pain, neck pain, muscle weakness, and fatigue. (Tr. 71, 100.) Her applications were denied initially and upon reconsideration. (Tr. 83-84, 114-115.) A hearing was convened on March 10, 2017 before an Administrative Law Judge ("ALJ"); Plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). (Tr. 39-58.) On June 14, 2017, ALJ MaryKay Rauenzahn issued a decision finding Plaintiff not disabled. (Tr. 14-27.) Plaintiff timely requested review of the ALJ's decision and, after the Appeals Council denied her request for review, filed a complaint in this Court. (Tr. 1-3.)

*Factual Background*

Born in 1988, Plaintiff was 24 years old on her alleged disability onset date. (Tr. 59.) Plaintiff completed high school and earned an undergraduate degree in psychology; she previously worked as a caregiver. (Tr. 25, 41-42.)

\\\\\

\\\\\

OPINION AND ORDER – 2

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502 and 404.1520. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment, she is not disabled.

\ \ \ \ \

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant still can perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must demonstrate that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1560(c). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v).

*The ALJ's Findings*

At step one of the sequential evaluation process outlined above, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the initial alleged onset date of March 15, 2013. (Tr. 16.)

At step two, the ALJ found Plaintiff had the following severe impairments: multiple sclerosis ("MS"), obesity, migraines, and major depressive disorder with anxiety distress. *Id.*

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings of presumptively disabling impairments. (Tr. 17-18.)

Next, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, with the following caveats:

OPINION AND ORDER – 4

> [She can] lift and carry 10 pounds occasionally and less than 10 pounds frequently
> . . . walk and/or stand for 2 hours during an 8-hour workday and sit for 6 hours
> during an 8-hour workday, with normal breaks. However, claimant cannot climb
> ladders, ropes, and scaffolds, crawl and kneel. On an occasional basis, she can
> climb stairs/ramps, stoop, and crouch. She cannot be exposed to extreme cold or
> heat. The claimant can understand, remember, and carry out simple, repetitive, and
> routine instructions that can be learned in 30 days or less. In addition, the claimant
> cannot operate a motor vehicle as part of job duties. Furthermore, the claimant
> cannot engage in balancing on elevated surfaces.

(Tr. 19.)

At step four, the ALJ determined Plaintiff could not perform her past relevant work as a caregiver. (Tr. 25.)

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that other jobs existed in the national economy which Plaintiff could perform, including "document preparer," "election clerk," and "telephone survey worker." (Tr. 26.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. 27.)

*Discussion*

Plaintiff on appeal raises three assignments of ALJ error: (1) that the ALJ improperly evaluated the medical opinion of her treating physician; (2) that the ALJ improperly evaluated her subjective symptom testimony; and (3) that the ALJ improperly rejected relevant lay witness testimony.

I.   <u>Medical Opinion Evidence</u>

Plaintiff argues that the ALJ failed to properly assess the medical opinion provided by her treating physician. An ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they

OPINION AND ORDER – 5

are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians are owed deference and will often be entitled to the greatest, if not controlling, weight. *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007) (citation and internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

In July 2015, Plaintiff's treating physician, neurologist David Clark, M.D., provided a medical opinion in a worksheet entitled "Multiple Sclerosis Medical Source Statement." (Tr. 421-24.) Dr. Clark indicated that he first treated Plaintiff in August 2014, with follow-up visits every one-to-three months. (Tr. 421.) He further indicated Plaintiff was diagnosed with MS based on MRI results, her "aggressive history of MS progression," and by examination. *Id.* The doctor noted that Plaintiff's symptoms and signs included chronic fatigue, paresthesias, weakness, bowel problems, depression, sensitivity to heat, pain, double vision, poor coordination, and numbness. *Id.* Dr. Clark indicated plaintiff had an MS exacerbation in January 2015, and had "typical MS fatigue." (Tr. 422). The doctor opined that Plaintiff could sit for two hours at one time, and could stand for only 10 minutes at a time before needing to sit down or walk around. *Id.* He further opined Plaintiff could sit for about two hours in an eight-hour workday, but could stand/walk less than two hours in that period. *Id.* He also indicated that Plaintiff would require a job that would allow her to shift positions at will, and would require excessive breaks during the course of a workday. *Id.* Dr. Clark noted that Plaintiff's need for extra breaks was due to chronic fatigue and

OPINION AND ORDER – 6

pain/paresthesias or numbness. (Tr. 423.) Additionally, the doctor felt that Plaintiff was likely to be off-task 25 percent or more, but otherwise retained the capacity to perform low-stress work, due to "significant depression on top of MS." (Tr. 424.) Furthermore, Dr. Clark indicated that although plaintiff has good days and bad days, he expected she would be absent from work more than four days per month. Finally, the doctor indicated that the earliest date that his description of the symptoms and limitations applied was 2010. *Id.*

The ALJ summarized and considered Dr. Clark's medical opinion, but ultimately accorded it "little weight." (Tr. 23.) The ALJ purported to reject the doctor's opinion on four bases: (1) the statement that Plaintiff's symptoms had existed since 2010 although the doctor did not treat her until 2014; (2) his opinion was inconsistent with objective evidence of improvement with medication, normal exam results, and reduction in brain lesion size; (3) the opinion was internally inconsistent regarding Plaintiff's ability to sit and walk; and (4) the opinion did not explain why Plaintiff would be expected to miss more than four workdays per month and be off-task 25 percent of the time. (Tr. 23-24.) Plaintiff contends that none of the ALJ's rationales meet the applicable specific-and-legitimate legal standard for the rejection of Dr. Clark's assessments.

Indeed, the record reflects that Plaintiff began her treatment by Dr. Clark, her neurologist, in August 2014. The doctor indicated that Plaintiff had been referred to his clinic by a Dr. Jacobsen, "regarding diplopia [double vision], paresthesias, abnormal MRI, and migraines." (Tr. 296.) Dr. Clark indicated that plaintiff reported frequent headaches beginning in about 2000. *Id.* The doctor further noted that beginning in 2010, Plaintiff "had the first of several neurologic episodes," which included diplopia, left leg paresthesias, and difficulty walking. *Id.* Plaintiff reported that her primary care doctor recommended an MRI, but concerned and frightened that she might have MS, Plaintiff did not pursue an MRI at that time. *Id.* Following recurrent symptoms,

OPINION AND ORDER – 7

noted Dr. Clark, Plaintiff had an MRI done in August 2014, which revealed "multiple T2 hyperintensities involving the corpus callosum, periventricular region, and infratentorial region, most consistent with CNS demyelination." *Id.* Dr. Clark indicated that Plaintiff's "history and imaging are very compelling," and diagnosed MS, observing that "[h]er disease seems relatively advanced radiographically," and that "[t]he number of enhancing lesions on her MRI may suggest a more aggressive treatment strategy." *Id.* Accordingly, the doctor ordered additional MRI studies and scheduled a follow-up appointment for the next month. (Tr. 301.)

Although the ALJ concluded that Dr. Clark's opinion regarding the onset of Plaintiff's symptoms was dubious because he was not treating her at the time, Dr. Clark provided a fairly thorough explanation of the history of development of Plaintiff's symptoms, as she related them. It is further notable that Plaintiff's previous doctor referred her to Dr. Clark's neurology practice for her symptoms, although those clearly began prior to Dr. Clark's August 2014 diagnosis. Dr. Clark's explanation of Plaintiff's "compelling" medical history, his assessment of multiple MRI results, and his diagnosis and treatment of her aggressively progressing MS is contrary to the ALJ's conclusion that his July 2015 opinion was "simply" reliant on Plaintiff's subjective complaints. (Tr. 23.) Additionally, there is nothing in the record that contradicts Plaintiff's description of her own medical history prior to 2014, which history the doctor found "compelling" in diagnosing MS and which the ALJ found to constitute a severe impairment at step two.

Moreover, and also contrary to the ALJ's finding, Dr. Clark did not opine that each of the limitations outlined in his July 2015 opinion all began in 2010. Rather, the doctor indicated that the "earliest date that the description of symptoms and limitations" applied was 2010, and that those symptoms exacerbated in January 2015. (Tr. 422, 424.) For example, in one of the earliest clinical visits of record in June 2014, Plaintiff indicated she had not seen a doctor for two years

OPINION AND ORDER – 8

due to a lack of insurance, but that her frequent headaches and other symptoms were worsening. (Tr. 345.) That provider also indicated that Plaintiff reported her symptoms had continued for years, and she left her job in 2013 because it became too difficult for her to work. (Tr. 350.) The following month, Plaintiff expressed concern that she might have MS based on her worsening headaches, a premonition which proved to be true. (Tr, 286, 343.) Further, Plaintiff's testimony during her hearing was consistent with the observations of her providers, as she described that she left her job due to fatigue and other symptoms which were progressively worsening. (Tr. 45.) Thus, viewing the record as a whole which consistently described the worsening of symptoms over time and culminating in multiple MRIs confirming the existence of MS, which is notable for being a progressively worsening condition despite periods of remission, the ALJ's conclusion that Dr. Clark's opinion was flawed to the extent it relied on those reports cannot be said to meet the specific-and-legitimate legal standard.

The ALJ also found that Dr. Clark's opinion was inconsistent with "a medical record showing improvement with medication, normal examination results, and a reduction in lesion size." (Tr. 23.) The record reflects, however, a more complex medical picture than the ALJ described. For example, one year after her initial diagnosis, Dr. Clark indicated that Plaintiff had an "aggressive history of MS progression," which was substantiated by several symptoms and signs, including chronic fatigue, paresthesias, weakness, blurred vision, bowel problems, sensitivity to heat, pain, double vision, poor coordination, and numbness." (Tr. 421.) By all accounts, Plaintiff had some improvement with treatment the following year, as a December 2015 MRI showed no progression of the disease, and that it appeared "some of the lesions had decreased in size." (Tr. 557.) Nonetheless, the MRI showed other lesions and signs were consistent with Plaintiff's previous MRI. *Id.* Another MRI a year later showed "[s]table examination compared

OPINION AND ORDER – 9

to December 2015, but also reflected persistent abnormal signals in the cerebrum. (Tr. 548.) Additionally, despite stabilization of her MS, Dr. Clark noted Plaintiff continued to report difficulties remembering details, chronic fatigue, and episodic headaches. (Tr. 504-05.) As such, the ALJ's conclusion was not supported by substantial evidence of significant functional improvement following Dr. Clark's July 2015 opinion.

Similarly, the ALJ's finding that Dr. Clark's medical opinion was internally inconsistent is not supported by the record. Although the ALJ found, and the Commissioner maintains, that Dr. Clark indicated that Plaintiff could both sit for more than two hours per day *and* could sit for about two hours per workday, that interpretation is erroneous. Dr. Clark clearly marked that Plaintiff could sit for two hours at one time, and that she could sit for about two hours total in a workday. (Tr. 422.) There is no clear inconsistency with that assessment; the ALJ's interpretation is simply not supported by the record.

Similarly, the ALJ's finding that Dr. Clark's opinion that Plaintiff would miss more than four workdays per month and would be expected to be off-task 25 percent of the time, was not properly explained and ignored the context of the medical opinion overall. Based on the record as a whole, perhaps the most significant symptoms of Plaintiff's MS condition were severe, chronic fatigue and headaches. The symptoms were observed in nearly all of Plaintiff's clinical visits throughout the record, as well as the consultative examination which the ALJ accorded "great weight." (Tr. 296, 307, 329, 346, 367, 378, 382, 388, 393, 421-22, 504, 511, 517, 522, 526, 532, 536, 540, 579.) Dr. Clark repeatedly noted that Plaintiff's "history, exam, and imaging [were] consistent with relapsing and remitting multiple sclerosis." *See id.* In such context, and by the explicit wording of the worksheet in which Dr. Clark provided his opinion, it is clear that fatigue and pain/paresthesias were the symptoms that would require excessive breaks during the workday.

OPINION AND ORDER – 10

(Tr. 422-23.) Dr. Clark additionally noted that Plaintiff's "significant depression" also contributed to her clinical picture, all of which would likely result in her having "good days and bad days." (Tr. 424.) Thus, the doctor's opinion that Plaintiff would miss more than four workdays per month was supported by substantial evidence. (Tr. 424.) Contrary to the Commissioner's argument, the ALJ's finding that Dr. Clark provided no support for his assessment that Plaintiff would have excessive absences is plainly belied by the full context of his medical opinion and the record as a whole.

Finally, the ALJ accorded great significance to Plaintiff's statement to Dr. Clark that she was tracking her steps on an electronic device, and finding she was taking about 10,000 steps per day. (Tr. 24, 510). Indeed, the ALJ employed that fact to discount Plaintiff's subjective symptom testimony and the lay witness testimony of her boyfriend, in addition to Dr. Clark's medical opinion. (Tr. 22, 24.) The ALJ determined that 10,000 steps per day equated to roughly five miles of walking, which was inconsistent with a limitation of walking for less than two hours per workday. (Tr. 24.) However, the rationale does not withstand scrutiny: assuming Plaintiff walks at a slower than average pace of 2.5 miles per hour, she would need only to walk for 2 hours over the course of a complete 12-hour waking day to achieve 5 total miles. As such, Dr. Clark's walking limitation is not inconsistent with Plaintiff's report. Moreover, Plaintiff did not express any ability to walk her daily 5 miles at a time; rather, she indicated she was able to stand and walk for portions of the day, with breaks to rest. (Tr. 229, 231, 233.) The ALJ's conclusion therefore was not supported by substantial evidence, and cannot be said to be specific-and-legitimate. For all the foregoing reasons, the ALJ's evaluation of Dr. Clark's medical opinion was erroneous.

\\\\\

\\\\\

II.     Subjective Symptom Testimony

The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . [or] other testimony that appears less than candid . . . ." *Id.* at 1284. However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nevertheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. See *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

Here, the ALJ provided three reasons to discount Plaintiff's symptom testimony because it was inconsistent with the following: (1) her daily activities; (2) reported improvement with medications; and (3) the objective medical evidence. (Tr. 21-22.) The court notes that the Commissioner declined to rely on all the reasons the ALJ cited for discrediting Plaintiff's symptom testimony. *See* Def.'s Br. at 4 n.2.

\ \ \ \ \

OPINION AND ORDER – 12

The ALJ noted that Plaintiff was able to independently attend to her own self-hygiene; meal preparation, with assistance from her boyfriend; and shopping and laundry; and that she had both good and bad days. (Tr. 22.) As noted above, both the ALJ and the Commissioner on review appeared to accord special significance to her ability to walk approximately 5 total miles each day. *Id.* However, for the reasons expressed *supra*, the ALJ's finding regarding Plaintiff's ability to take 10,000 steps over the course of a full day is not inconsistent with Dr. Clark's assessment, or Plaintiff's testimony that she can stand and walk in order to perform certain daily activities, but requires numerous break periods in order to do so. Further, although Plaintiff testified that she was able to complete some basic activities and household chores, that does not necessarily mean she is able to perform those activities on a consistent basis in a competitive work environment. Indeed, the Ninth Circuit has long held that a claimant's ability to perform minimal activities does not alone contradict an allegation of disability. *Orn*, 495 F.3d at 639 (citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104 at 1112-13 (9th Cir. 2012) (claimant need not vegetate in a dark room in order to be eligible for benefits) (citation omitted); *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (claimant did not purport to be completely unable to perform all basic activities, and therefore claimant's testimony did was not contradicted by reported activities of daily living). As such, the ALJ's first rationale did not meet the rigorous clear-and-convincing legal standard.

The ALJ also impugned Plaintiff's testimony based on a record of improved functioning with effective treatment. Although such a rationale is generally valid, it must be supported by substantial evidence in order to meet the applicable clear-and-convincing standard. Here, the record reflects that following treatment for MS, Plaintiff's MRI showed that the progression of her disease had ceased, and that signal foci had decreased in size compared to an MRI six months prior. (Tr. 556.) One year later, in December 2016, yet another MRI result was obtained, which

showed "[s]table examination" compared to her December 2015 MRI. (Tr. 547.) However, the December 2016 MRI also showed continued abnormal signals in the corpus callosum. *Id.*

Further, the report of the December 2016 MRI reflected that it was "*congruent* with the [Plaintiff's] reported history of multiple sclerosis." *Id.* (emphasis added). Moreover, the same report indicated that Plaintiff reported an *increase* in fatigue and migraine headaches. *Id.* Thus, taken as a whole, although Plaintiff's imaging results showed that her MS condition had remitted to some degree, her symptoms, which were affirmatively "congruent" with the MRI results, had worsened. *Id.* In short, although the ALJ felt that the lack of progression of the disease contradicted Plaintiff's self-reports, her medical providers did not so believe. Accordingly, the ALJ's rationale was not clear-and-convincing or supported by the medical evidence.

Moreover, even assuming Plaintiff's condition had stabilized with medication, it was erroneous for the ALJ to assume that such stabilization indicated she had regained her ability to perform in a competitive work environment. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (it is error for an ALJ to pick out isolated evidence of improvement in order to conclude that a claimant is capable of regular work). Indeed, despite stabilization, Plaintiff continued to have extreme fatigue, headaches, and pain, as described in the previous section of this Opinion. *See supra.*

Finally, the ALJ determined Plaintiff's testimony was not reliable to the extent it was not substantiated by the objective medical evidence of record. However, considering that the ALJ's remaining rationales failed to meet the clear-and-convincing legal standard, the Court may not affirm the ALJ's conclusion on that basis alone. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (Commissioner may not discredit a claimant's testimony regarding symptoms solely because they are not supported by objective medical evidence). Therefore, for the foregoing

reasons, the Court cannot affirm the rationales provided by the ALJ for discounting Plaintiff's subjective symptom testimony.

III.   Lay Witness Testimony

Finally, the ALJ rejected the testimony of Plaintiff's live-in boyfriend, David N., finding that it was inconsistent with Plaintiff's reported daily activities. (Tr. 24, 236-43.) Testimony provided by lay witnesses must be considered by the ALJ in rendering a disability decision. 20 C.F.R. § 404.1512(b)(4); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to discount otherwise competent lay testimony, the ALJ is required to give reasons germane to that witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). However, where the ALJ provides legally sufficient reasons for rejecting a claimant's own symptom allegations, an ALJ's failure to provide germane reasons for rejecting similar testimony by a lay witness is harmless error. *Molina*, 674 F.3d at 1122.

In support of his finding, the ALJ outline the same minimal activities for which he erroneously discounted Plaintiff's own symptom testimony. (Tr. 24.) To the extent the ALJ erred in rejecting Plaintiff's testimony based on those minimal activities, the ALJ also erred in rejecting David N.'s similar testimony. For example, contrary to the assertions of the ALJ and the Commissioner, for the reasons described *supra*, Plaintiff's ability to walk 5 miles total in a day is not inconsistent with the activities she described. Similarly, although the ALJ found that the lay witness indicated Plaintiff could "only walk 2 blocks," the record reflects he actually indicated Plaintiff could walk for 15 to 20 minutes before she needed to stop and rest, which is not inconsistent with Plaintiff's own testimony or the opinion of treating physician Dr. Clark. For these reasons, the ALJ's rationales for discounting the testimony of David N. were not germane to him.

OPINION AND ORDER – 15

IV.     Remand to Determine Disability Onset Date

Based on the ALJ's harmful errors in evaluating the medical opinion of Dr. Clark, plaintiff's subjective symptom testimony, and the testimony of David N., this case must be remanded. The sole remaining issue is to determine whether to remand for further proceedings or for payment of benefits. The decision to remand for further proceedings turns upon the likely utility of such proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). While the typical course is to remand for further proceedings, the Ninth Circuit has repeatedly credited evidence as true when the ALJ failed to provide clear and convincing reasons for discounting the testimony of a plaintiff. *See, e.g., Garrison*, 759 F.3d at 1022-23; *Orn*, 495 F.3d at 640; *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). A court "should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits" when the follow conditions are met: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are not outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the [plaintiff] disabled were such evidence credited." *Benecke*, 379 F.3d at 593.

The first prong of the credit-as-true analysis is met based on the aforementioned errors of the ALJ. However, the record is not fully developed in this case. Even assuming the evidence at issue is credited, the record does not reflect when Plaintiff's disability began. There are at least four dates of record that an ALJ on remand might adopt as the onset of disability date: when Plaintiff stopped working in 2013, when she was diagnosed with MS in 2014, when her MS apparently exacerbated in January 2015, or, at the latest, when her disability was confirmed pursuant to Dr. Clark's July 2015 medical opinion. In such circumstances, remand for further proceedings to determine an onset date is appropriate. *See Luna v. Astrue*, 623 F.3d 1023, 1035

(9th Cir. 2010); *Armstrong v. Comm'r Soc. Sec. Admin.*, 160 F.3d 587, 590-91 (9th Cir. 1998) (remand is appropriate where the onset date of disability is not clear from the record); *see also* Social Security Ruling ("SSR") 18-1p[2].

*Conclusion*

Based on the foregoing, the Commissioner's decision denying Plaintiff's applications for DIB and SSI is REVERSED and REMANDED for the limited purpose of determining the onset date of disability.

DATED this 14th day of May, 2020.

John V. Acosta
United States Magistrate Judge

---

[2] *Available at* https://www.ssa.gov/OP_Home/rulings/di/01/SSR2018-01-di-01.html.

OPINION AND ORDER – 17